IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| JPMORGAN CHASE BANK, N.A., | * | |
| | * | |
| Plaintiff, | * | |
| | * | CIVIL ACTION NUMBER: |
| vs. | * | |
| | * | CV: 11-126 |
| AIG BAKER ORANGE BEACH | * | |
| WHARF, L.L.C., | * | |
| | * | |
| Defendant. | * | |

## COMPLAINT

Comes now JPMorgan Chase Bank, N.A. (the "Lender" or "Chase"), and for its Complaint against AIG Baker Orange Beach Wharf, L.L.C., (the "Borrower" or "Wharf, L.L.C."), states as follows:

### PARTIES, JURISDICTION AND VENUE

1. Chase is a national banking association organized under the laws of the United States with its main office in Columbus, Ohio. As set out in Paragraphs 2 and 3, no defendant is a citizen of Ohio for diversity purposes.

2. The Borrower is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Baldwin County, Alabama. The sole member of Wharf, L.L.C. is AIG Baker Shopping Center Properties, L.L.C., a Delaware limited liability company, which is wholly owned by the

{M0066274.1}

Partnership; therefore, for diversity purposes, Wharf L.L.C. is a citizen of Delaware and Alabama.

3. The amount in controversy, exclusive of interest and costs, exceeds $75,000.00

4. This Court has original jurisdiction of this case pursuant to 28 U. S. C. §1332.

5. Venue is proper pursuant to 28 U. S. C. §1391(a)(2).

## NATURE OF ACTION

6. Chase made an acquisition and construction loan to the Borrower which is secured by, *inter alia*, a first mortgage on real estate situated in Orange Beach, Alabama. Chase files this Complaint in order to enforce its rights and remedies under the loan documents executed in connection with the loan and to preserve the value of the property secured by its mortgage. Chase seeks a judgment against the Borrower for the principal indebtedness outstanding under the loan, plus accrued and accruing interest, late charges, expenses of collection, including attorneys' fees, and costs, as well as the appointment of a receiver of the property securing the first mortgage.

## FACTUAL ALLEGATIONS

7. Wharf, L.L.C. is a limited liability company organized to own and develop real estate located in Orange Beach, Alabama.

8. On or about October 27, 2005, Chase made a loan to the Borrower in the original amount of $84,185,000.00 (the "Loan")

for the acquisition of certain real property and construction of a retail shopping center and related facilities, all located in Orange Beach, Alabama and commonly known as the retail portion of the Wharf (the "Project" or the "Property").

9. The Loan is evidenced by that certain Promissory Note (the "Note") dated October 27, 2005 in the principal amount of the Loan made by the Borrower in favor of Chase, and by that certain Construction Loan Agreement executed by and between Chase and Borrower dated October 27, 2005, as modified by that certain Amended and Restated Construction Loan Agreement (the "Loan Agreement") executed by and between Chase and the Borrower and dated as of October 26, 2008.  A true and correct copy of the Note is attached hereto as **Exhibit A**.  A true and correct copy of the Loan Agreement, as amended, is attached hereto as **Exhibit B.**

10. In addition to the Borrower's obligation under the Note to pay the principal of and interest on the Loan, the Note provides that the holder of the Note is entitled to recover its costs and expenses, including attorneys' fees incurred in collecting the sums due under the Note.  See **Exhibit A.**

11. The Loan is secured by a Future Advance Mortgage, Assignment of Leases and Rents and Security Agreement dated October 27, 2005 made by the Borrower in favor of Chase and recorded in the Office of the Judge of Probate of Baldwin County

at Instrument Number 934698 the (the "Mortgage").  A true and correct copy of the Mortgage is attached hereto as **Exhibit C.**

12. The Mortgage is in first priority position and encumbers the property described in Exhibit A to the Mortgage.

13. Chase has filed UCC financing statements covering the personal property collateral encumbered by the Mortgage in the Office of the Secretary of State of Alabama and the Baldwin County, Alabama real property records (the "UCC's").  True and correct copies of the UCC's are attached hereto as **Exhibit D.**

14. In addition to the Note, the Loan Agreement, and the Mortgage, the Loan documents include, among other documents, an Environmental Risk Assessment dated October 27, 2005, executed by the Borrower in favor of the Lender, and a Collateral Assignment of Contracts and Plans and Other Agreements, dated October 27, 2005, executed by the Borrower in favor of the Lender, all of which are collectively referred to as "the Loan Documents."

15. A Guaranty was also executed by AIG/Baker Partnership in connection with the Loan Documents.  Chase asserts no claim against the Guarantors in this action, and all claims against the Guarantors are expressly reserved.

16. The amount outstanding on the Loan as of February 15, 2011, exclusive of attorneys' fees, costs, protective advances for taxes and insurance, and other charges is $54,439,038.46,

consisting of principal in the amount of $50,435,651.00, and accrued interest in the amount of $4,003,387.46. Interest continues to accrue at the rate of $5,972.42 per diem. Chase has received no payments on the Loan since February 10, 2009.

### COUNT I – BREACH OF CONTRACT

17. Chase adopts and incorporates all preceding paragraphs as if fully set forth herein.

18. Default has occurred in the repayment of the Loan, the maturity thereof has been accelerated, and all amounts due and owing thereon are immediately payable.

19. Chase has made demand for payment of the outstanding balance due on the Loan.

20. The Borrower is in default in the performance of its obligations under the Loan Documents.

21. Despite written demand, the Borrower has failed to pay Chase the amounts due under the terms of the Loan Documents.

**WHEREFORE,** Chase demands judgment against the Borrower for the principal indebtedness outstanding under the Loan, plus accrued and accruing interest, late charges, expenses of collection, including attorneys' fees, and costs, as well as such other, further and different relief to which Chase may be entitled and is just and proper in this action.

## COUNT II – ATTORNEYS' FEES

22. Chase incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

23. Under the terms of the Loan Documents, the Defendant is obligated to pay Chase's cost of collecting the amounts due under the Loan Documents, including attorneys' fees and other costs.

**WHEREFORE**, Chase demands judgment against the Defendant, for attorneys' fees.

## COUNT III – APPOINTMENT OF RECEIVER

24. Chase adopts and incorporates all preceding paragraphs as if fully set forth herein.

25. Paragraph 6.10 of the Mortgage states:

> Upon the occurrence of an Event of Default or at any time after commencement of a foreclosure sale or any legal proceedings under this Mortgage, Mortgagee may, at Mortgagee's election, make application to a court of competent jurisdiction for appointment of a receiver of the Property as a matter of strict right, without notice to Mortgagor and without regarding to the adequacy of the value of the Property for the repayment of the Debt, and Mortgagor hereby irrevocably consents to such an appointment. Any receiver shall have the usual powers and duties of receivers in similar cases, including the full power to possess, rent, maintain, repair and operate the Property upon such terms and conditions as may be approved by the court, and shall apply the rents realized in the same manner and order as foreclosure proceeds in accordance with Section 6.5.

See **Exhibit C.**

26. Under the terms of the Mortgage, Borrower's failure to timely pay the indebtedness owed to Chase constitutes a default under the Mortgage. See **Exhibit C.**

27. Borrower has failed to cure the payment default within the time prescribed by the Mortgage, entitling Chase to exercise its right to the appointment of a receiver of the Property.

28. In addition to Chase's contractual right to the appointment of a receiver of the Property, there are equitable considerations which support the appointment of a receiver to manage and operate the Property. Specifically, Borrower has failed to efficiently manage and operate the Project securing the indebtedness of Borrower to Chase.

29. The potential harm to Chase is the mismanagement of the Project and the diminution in value of the Property.

30. Given that the Borrower apparently lacks sufficient funds pay the amounts owing thereon, this harm is irreparable and Chase has no adequate remedy at law to remedy the harm.

31. Furthermore, the potential harm to Chase outweighs any conceivable harm to the Borrower.

**WHEREFORE,** Chase demands judgment:

(i)   appointing Greg T. Maloney ("Receiver"), of Jones Lang LaSalle Americas, Inc. ("JLL"), as receiver of the Property.

(ii)  authorizing Receiver to retain JLL as his property manager, leasing agent, and sales agent.

(iii)  authorizing Receiver immediately to enter upon and take and maintain full control of the Property, to collect the rents, income and profits derived therefrom, and to take all other acts of Receiver specified in the Mortgage, as permitted by applicable law or as ordered by this Court;

(iv)  granting Receiver the power to:  (a) enter upon and take possession and control of any and all of the Property; (b) take and maintain possession of all documents, books, records, papers and accounts relating to the Property; (c) exclude the Borrower and any agent, servant or employee of the foregoing wholly from the Property; (d) manage and operate the Property; (e) preserve and maintain the Property; (f) make repairs and alterations to the Property, as limited by subsection (j) below; (g) undertake any construction or repair of the Property, with such changes, additions or modifications of the Property as the Receiver may deem appropriate or desirable, as limited by subsection (j) below; (h) conduct a marketing or leasing program with respect to all or a portion of the Property, directed to the leasing or sale of all or portions of the Property under such terms and conditions as Chase may in its sole discretion deem appropriate or desirable; (i) conduct a Receiver's sale of the Property; (j) employ such contractors, subcontractors,

materialmen, architects, engineers, consultants, managers, brokers, marketing agents, or other employees, agents, independent contractors or professionals, as it may deem appropriate or desirable to implement and effectuate the rights and powers herein granted, provided that no contractors shall be retained for performance of work expected to exceed an aggregate of $10,000.00 on an annual basis without Chase's prior approval; (k) execute and deliver, in the name of Chase as attorney-in-fact and agent of the Borrower or in its own name as trustee, such documents and instruments as are necessary or appropriate to consummate authorized transactions; (l) enter into such leases, whether of real or personal property, or tenancy agreements, under such terms and conditions as Chase may in its sole discretion deem appropriate or desirable; (m) collect and receive the rents and profits from the Property; (n) eject tenants or repossess personal property, as provided by law, for breaches of the conditions of their leases or other agreements; (o) sue for unpaid rents and profits, payments, income or proceeds in the name of the Borrower; (p) maintain actions in forcible entry and detainer, ejectment for possession and actions in distress for rent; (q) compromise or give acquittances for rents and profits, payments, income or proceeds that may become due; (r) undertake variances with respect to the Property or subdivide the Property, and enter into any document

in connection with the foregoing; (s) to acquire and place property insurance on the property; (t) to manage, access, and transfer funds to and from, or close, bank accounts currently maintained in connection with management of the property, specifically JPMorgan Chase Bank, N. A., account number 885886465; and (u) do any lawful acts reasonably requested by Chase to protect the security hereof and use such measures, legal and equitable, reasonably requested by Chase to implement and effectuate the provisions of the Mortgage or the Loan Documents; and

(v)   granting Chase such other relief as the Court deems proper.

DATED this **11th** day of **March, 2011.**

/s/Sandy G. Robinson
**SANDY G. ROBINSON – ROBIS5756**
**DONALD J. STEWART – STEWD1116**
**IAN D. ROSENTHAL – ROSEI6905**
Attorneys for Plaintiff
JPMorgan Chase Bank, N.A.
**CABANISS, JOHNSTON, GARDNER,**
  **DUMAS & O'NEAL LLP**
Post Office Box 2906
Mobile, Alabama  36652
251/415-7300 Telephone
251/715-7350 Facsimile
sgr@cabaniss.com
djs@cabaniss.com
idr@cabaniss.com

**Defendant's Address:**

AIG Baker Orange Beach Wharf, L. L. C
c/o A.B. Shopping Center Properties, Inc.
1701 Lee Branch Lane
Birmingham, AL  35242
Attn:  Mr. Ron Day

{M0066274.1} - 11 -