IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JPMORGAN CHASE BANK, N.A., | * |
| | * |
| Plaintiff, | * |
| | *   Civil Action No: 11-00126-CG |
| vs. | * |
| | * |
| AIG BAKER ORANGE BEACH | * |
| WHARF, L.L.C., | * |
| | * |
| Defendant. | * |

## CONSENT ORDER APPOINTING RECEIVER

This matter comes before the Court on the Motion of JPMorgan Chase Bank, N.A. ("the Lender" or "Chase") for Appointment of a Receiver ("the Motion") pursuant to Rule 66 of the Federal Rules of Civil Procedure.  The defendant does not oppose the motion and has consented to its entry.  The Court finds as follows:

### Findings of Fact

1.    AIG Baker Orange Beach Wharf, L.L.C., (the "Borrower" or "Wharf, L.L.C.") is a limited liability company organized to own and develop real estate located in Orange Beach, Alabama.

2.    On or about October 27, 2005, Chase made a loan to the Borrower in the original amount of $84,185,000.00 (the "Loan") for the acquisition of certain real property and construction of a retail shopping center and related facilities, all

located in Orange Beach, Alabama and commonly known as the retail portion of the Wharf (the "Project" or the "Property").

3. The Loan is evidenced by that certain Promissory Note (the "Note") dated October 27, 2005, in the principal amount of the Loan made by the Borrower in favor of Chase, and by that certain Construction Loan Agreement executed by and between Chase and Borrower dated October 27, 2005, as modified by that certain Amended and Restated Construction Loan Agreement (the "Loan Agreement") executed by and between Chase and the Borrower and dated as of October 26, 2008.  A true and correct copy of the Note is attached to the Complaint herein as **Exhibit A**.  A true and correct copy of the Loan Agreement, as modified, is attached to the Complaint as **Exhibit B.**

4. In addition to the Borrower's obligation under the Note to pay the principal of and interest on the Loan, the Note provides that the holder of the Note is entitled to recover its costs and expenses, including attorneys' fees incurred in collecting the sums due under the Note.  See **Exhibit A** to the Complaint**.**

5. The Loan is secured by a Future Advance Mortgage, Assignment of Leases and Rents and Security Agreement dated October 27, 2005, made by the Borrower in favor of Chase and recorded in the Office of the Judge of Probate of Baldwin County at Instrument Number 934698 the (the "Mortgage").  A true and correct copy of the Mortgage is attached to the Complaint herein as **Exhibit C.**

Exhibits A, B, and C are referred to collectively here as "the Loan Documents."

6. The Mortgage is in first priority position and encumbers the property described in Exhibit A to the Mortgage.

7. The amount outstanding on the Loan as of February 15, 2011, exclusive of attorneys' fees, costs, protective advances for taxes and insurance, and other charges is $54,439,038.46, consisting of principal in the amount of $50,435,651.00, and accrued interest in the amount of $4,003,387.46. Interest continues to accrue at the rate of $5,972.42 per diem. Chase has received no payments on the Loan since February 10, 2009.

8. The parties agree that default has occurred in the repayment of the Loan, the maturity thereof has been accelerated, and all amounts due and owing thereon are immediately payable. Chase has made demand for payment of the outstanding balance due on the Loan, but defendant has failed and refused to honor its obligation under the Note.

9. Borrower's default in the payment of the Loan constitutes a default under the Loan Documents.

10. Paragraph 6.10 of the Mortgage states:

> Upon the occurrence of an Event of Default or at any time after commencement of a foreclosure sale or any legal proceedings under this Mortgage, Mortgagee may, at Mortgagee's election, make application to a court of competent jurisdiction for appointment of a receiver of the Property as a matter of strict right, without notice to Mortgagor and without regarding to the adequacy of the value of the

> Property for the repayment of the Debt, and Mortgagor hereby irrevocably consents to such an appointment. Any receiver shall have the usual powers and duties of receivers in similar cases, including the full power to possess, rent, maintain, repair and operate the Property upon such terms and conditions as may be approved by the court, and shall apply the rents realized in the same manner and order as foreclosure proceeds in accordance with Section 6.5.

See **Exhibit C** to the Complaint**.**

11.   Borrower has failed to cure the payment default within the time prescribed by the Mortgage, entitling Chase to exercise its right to the appointment of a receiver of the Property.

12.   Given that the Borrower apparently lacks sufficient funds pay the amounts owing thereon, this harm is irreparable and Chase has no adequate remedy at law to remedy the harm.

## Conclusions Of Law

13.   Federal Courts have recognized that appointment of a Receiver is appropriate where the parties have contractually agreed to a receivership. See, e.g., Britton vs. Green, 325 F.2d 377 (10th Cir. 1963).

14.   As the Borrower is in default under the terms of the Mortgage, and the terms of the Mortgage expressly provide that Chase is entitled to the appointment of a Receiver to operate and manage the property upon the occurrence of an event of default, sufficient grounds exist for the appointment of a Receiver of the Property.

15. Even absent an express contractual right to the appointment to a Receiver, this Court has the inherent equitable power to appointment a Receiver to operate and manage the property. See, Morgan vs. McDonough, 540 F.2d 527 (1st Cir., 1976).

16. Based on the foregoing, the Court finds that appointment of a Receiver is warranted under the agreement between the parties and the applicable law.

17. Chase has requested that the Court appoint Greg T. Maloney, of Jones, Lang, LaSalle Americas, Inc. ("JLL") as Receiver of the Property. The Court is satisfied that the Receiver has experience in the management and operation of commercial real estate such as the Property at issue, that he consents to be appointed as Receiver, and that he is ready willing and able to immediately assume management and operation of the Property. The Court also finds that his fee for serving as a Receiver of $5,000.00 (FIVE THOUSAND AND no/100) per month, plus all reasonable expenses, including the cost of reasonable attorneys' fees incurred in performance of his duties, is reasonable.

Based on the foregoing, the Court **ORDERS** as follows:

(i) Greg T. Maloney ("Receiver"), of Jones Lang LaSalle Americas, Inc., is hereby appointed by the Court as Receiver of the Property.

(ii)     the Receiver is authorized immediately to enter upon and take and maintain full control of the Property, to retain JLL as his property manager, leasing agent, and sales agent, and to collect the rents, income and profits derived therefrom, and to take all other acts of Receiver specified in the Mortgage, as permitted by applicable law;

(iii)  the Court grants the Receiver the power to:  (a) enter upon and take possession and control of any and all of the Property; (b) take and maintain possession of all documents, books, records, papers and accounts relating to the Property; (c) exclude the Borrower and any agent, servant or employee of the foregoing wholly from the Property; (d) manage and operate the Property; (e) preserve and maintain the Property; (f) make repairs and alterations to the Property as limited by subsection (j) below; (g) undertake any construction or repair of the Property, with such changes, additions or modifications of the Property as the Receiver may deem appropriate or desirable to maintain the property or as may be required to comply with existing or future leases entered into in the ordinary course of business, all of the foregoing subsection (g) as limited by subsection (j) below; (h) conduct a marketing or leasing program with respect to all or a portion of the Property, directed to the leasing or sale of all or portions of the Property under such terms and conditions as Chase may in its sole discretion deem appropriate or desirable; (i) conduct a Receiver's sale of the Property on terms acceptable to both

plaintiff and defendant or, alternatively, as approved by the Court following notice to defendant and an opportunity for defendant to object; (j) employ such contractors, subcontractors, materialmen, architects, engineers, consultants, managers, brokers, marketing agents, or other employees, agents, independent contractors or professionals, as it may deem appropriate or desirable to implement and effectuate the rights and powers herein granted, provided however that no contractors shall be retained for performance of work expected to exceed an aggregate of $10,000.00 on an annual basis without Chase's approval; (k) enter into such leases, whether of real or personal property, or tenancy agreements, in the ordinary course of business or alternatively as approved by the Court, under such terms and conditions as Chase may in its sole discretion deem appropriate or desirable; (l) collect and receive the rents and profits from the Property; (m) eject tenants or repossess personal property, as provided by law, for breaches of the conditions of their leases or other agreements; (n) sue for unpaid rents and profits, payments, income or proceeds in the name of the Borrower; (o) maintain actions in forcible entry and detainer, ejectment for possession and actions in distress for rent; (p) compromise or give acquittances for rents and profits, payments, income or proceeds that may become due in the ordinary course of business or alternatively as approved by the Court; (q) undertake variances with respect to the Property or subdivide the Property, and enter into any document in connection with

the foregoing; (r) to acquire and place property insurance on the property; (s) to manage, access, transfer to and from or close bank accounts currently maintained in connection with the management of the property, specifically JPMorgan Chase, N.A. Account Number 885886465; and (t) to use Borrower's W-9 in connection with collection of rents and other actions undertaken in pursuance of its duties hereunder; and

  (iv) On or before the sixtieth (60th) business day after the entry of this Order by this Court (the "Budget Deadline"), the Receiver shall furnish to Chase a detailed, projected, monthly operating budget fort he receiver and the Property (as may be amended from time to time, the "Budget"), which shall be subject to the written approval of Chase.  Chase shall advise the Receiver within ten (10) business days of receipt of the Budget, or any amendment thereof, whether Chase approves or disapproves the Budget, or any amendment thereof.  Within five (5) days of Chase's approval of the budget, the budget shall be filed with this Court;

  (v) Subject to the availability of funds in the receivership estate, the Receiver shall pay the normal, ordinary, and necessary operating expenses of the Property, including without limitation, reasonable expenses required to put the Property in a rentable and/or saleable (market-ready) condition, from the rents and other revenues collected from the Property.  In the event that the rents and other revenues collected from the Property are insufficient to pay the normal, ordinary,

and necessary operating expenses of the Property (including the Receiver's reasonable fees and expenses), Chase is authorized to and shall advance funds to the Receiver to fund such operating expenses, provided that Chase shall have no obligation to fund expenses in excess of the projected expenses set forth in the Budget previously prepared by Receiver and approved by Chase for the applicable monthly period.  Notwithstanding the foregoing, Chase agrees that, in the event that the rents and other revenues collected from the Property are insufficient to pay the reasonable fees and expenses of the Receiver incurred in connection with the appointment of the Receiver, the entry of this Order, and the performance of the Receiver's duties hereunder through the Budget Deadline, Chase shall promptly advance to the Receiver sufficient funds to pay such expenses.  To the extent provided by the Loan Documents, specifically Exhibits A, B, and C, funds advanced by Chase pursuant to this Order shall constitute a demand obligation owing to Chase by the Borrower secured by the Mortgage and the other Loan documents, and accruing interest the default rate under the Note;

     (vi)  The Receiver shall be paid for his services at the rate of $5,000.00 per month plus his reasonable expenses (including reasonable attorney's fees and expense);

     (vii)  On or before the 15th day of each month, the Receiver shall make an accounting of all rents and revenues collected and all expenses paid for the

previous month and shall file said accounting with the Court and shall serve upon Chase's counsel and the Borrower a copy of said accounting.  The Receiver shall file a final report within forty-five (45) days after the termination of the receivership;

    (viii)  On or before the 15th day of each month, the Receiver shall pay to Chase all receipts remaining, if any, after payment of the just and reasonable expense of the Receiver to be applied to the indebtedness of the Borrower to Chase pursuant to the Mortgage and other Loan documents;

    (ix)  Subject to the availability of funds in the receivership estate, the Receiver shall pay all expenses (1) incurred with regard to the Property which were incurred in the normal and ordinary courts of business of the Property by the Receiver on or after the Receiver taking possession of the Property and (2) incurred by the Receiver in connection with the appointment of the Receiver and the entry of this Order.  Except for expenses incurred by the Receiver prior to the entry of this Order in connection with the appointment of the Receiver or the entry of this Order, neither the Receiver nor Chase shall be liable for any expenses incurred with regard to the Property incurred prior to the Receiver taking possession of the Property, nor shall the Receiver or Chase be required to use any rents or other revenues collected after the Receiver takes possession of the Property for payment of any expenses incurred with regard to the Property prior to

the Receiver's taking possession of the Property.  Notwithstanding the foregoing, the Receiver shall pay those expenses incurred by the Receiver prior to the entry of this Order in connection with the appointment of the Receiver and the entry of this Order, and may, in the Receiver's sole and absolute discretion, pay those expenses which were incurred in the normal and ordinary course of business of the Property and which were incurred prior to the Receiver taking possession of the Property, if, and only if, the payment of any such pre-existing expenses is necessary and critical to the ongoing operation of the Property (e.g., utilities).  Otherwise, no pre-existing expenses shall be paid by the Receiver.  It shall be incumbent upon the Receiver, in the Receiver's sole and absolute discretion, to make a determination as to which expenses, if any, incurred prior to the Receiver taking possession of the Property were incurred in the normal and ordinary courts of business and the payment of which is necessary and critical to the ongoing operation of the Property;

(x)  The Court orders and directs that no utility company currently providing water, electric, gas, telephone, or other utility service to any part of the Property shall cancel service for non-payment within sixty (60) days of the date of this Order and further orders and directs that no such utility shall require a new deposit in order to transfer or set up new service in the Receiver's name;

(xi)  The Receiver shall take reasonable actions to ensure that it complies with all laws applicable to the operation of the Property as provided under any

laws of the United States, the State of Alabama, and otherwise;

(xii)  The Court shall retain jurisdiction and supervision of all matters concerning the Receiver and the receivership during the pendency of this action. The Receiver may seek instructions and additional authority from the Court upon written notice to Chase and Borrower.

If jurisdiction and further supervision by the Court of matters concerning the Receiver are deemed necessary by a party or parties beyond the termination of this action, that party or parties shall file a motion showing good cause why such an extension of jurisdiction is needed.

**DONE** and **ORDERED** this 11th day of April, 2011.


/s/  Callie V. S. Granade
UNITED STATES DISTRICT JUDGE